Harding Glass Company v. Commissioner.
Harding Glass Co. v. Commissioner
Docket No. 109310.
United States Tax Court
1943 Tax Ct. Memo LEXIS 348; 1 T.C.M. (CCH) 943; T.C.M. (RIA) 43188; April 22, 1943
*348 Joseph R. Brown, Esq. and John Wiseman, C.P.A., 408 Wheeling Bank & Trust Bldg., Wheeling, W. Va., for the petitioner. Orris Bennett, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined income tax deficiencies of $10,050.71 and $33,146.48 for the calendar years 1936 and 1937, respectively. Petitioner claims overpayments for these years of $291.18 and $2,856.60, respectively. One issue, for each of the years involved, is upon petitioner's right to a credit in the amount of its entire net income for such year under section 26 (c) (1) of the Revenue Act of 1936. [1] A second issue for 1937 is whether a gain of $25,000, realized by petitioner from a sale of stock, constituted income taxable in that year. Certain of the facts are stipulated and are so found. Additional facts set out in the findings of fact are found upon testimony submitted by deposition and evidence received at the hearing. *349 Findings of Fact Petitioner is a West Virginia corporation which manufactures sheet glass at its plant at Fort Smith, Arkansas. Its returns for 1936 and 1937 were filed with the collector of internal revenue at Little Rock, Arkansas. In 1928 petitioner issued ten-year first mortgage bonds in a total of $175,000, secured by a deed of trust. At the close of each of the years here involved a substantial amount of this bond issue was outstanding and unpaid. One of the provisions of the deed of trust read: The Company will not declare any dividends except out of earnings subsequent to January 1, 1928, and in no event will any dividends be paid except out of net earnings calculated after making proper allowances and deductions for depreclation or depletion which shall be made according to good accounting practice in the industry. * * * The deed of trust further provided: * * * In no event will the Company pay any dividend, nor will it convert any of its current assets, as hereinafter defined, into fixed assets, either of which will reduce the net working capital of the Company to a sum less than One Hundred Thirty Thousand Dollars ($130.000.00) or which will have the effect of reducing *350 the current assets of the Company to an amount less than Two and one-half (2 1/2) times the current liabilities of the Company. The balance sheets of petitioner as of December 31, 1936 and December 31, 1937 are as follows: ASSETS
Dec. 31, 1936
Dec. 31,1937
Cash in banks and on hand
$118,828.98
$ 25,073.75
Accounts and notes receivable
112,017.88
23,246.08
Inventories of materials and supplies
36,143.33
59,399.23
Inventories of glass
54,458.51
322,747.49
Prepaid insurance and taxes
7,745.38
7,359.58
Deposit on Liability Insurance Contract
2,800.00
2,800.00
Stock of Citizens Gas Company
50,000.00
Sinking Fund
90.00
90.00
Account of the Twin City Pipe Line Company (for balance due under
contract for sale of Citizens Gas Company stock)
33,207.10
Fixed Assets - net
1936 - after reserve for depreciation of $170,656.56
149,013.54
1937 - after reserve for depreciation of $184,463.01
243,951.90
Clay materials and finished clay shapes
4,028.03
4,880.10
Tank repair materials
2,674.65
5,837.40
Bond discount
1,928.77
18.64
TOTAL ASSETS
$539,729.07
$728,611.27
LIABILITIES AND CAPITAL
Dec. 31, 1936
Dec. 31,1937
Liabilities
Accounts payable for purchases and expenses (other than account
due parent company)
$ 23,121.42
$ 17,522.88
Due to Fourco Glass Company for commissions
17,952.91
3,729.38
Due to Fourco Glass Company for cash advances
70,417.69
Due to Fourco Glass Company for materials and supplies
3,867.15
24,296.71
Accrued payroll
21,818.83
13,379.15
Accrued interest
3,006.52
2,083.33
Accrued federal income tax per original returns
7,829.10
25,506.28
Accrued taxes - other
10,179.14
11,795.71
Other accruals
466.27
88,241.34
168,731.13
Mortgage Notes
144,000.00
100,000.00
Reserve for Tank Repairs
37,011.60
129,237.96
Capital
Capital stock outstanding
140,000.00
140,000.00
Earned surplus
130,476.13
190,642.18
Total Capital Per Books
270,476.13
330,642.18
TOTAL LIABILITIES AND CAPITAL
$539,729.07
$728,611.27
*351 The balance sheets of petitioner as of March 27, 1937, June 19, 1937 and October 9, 1937, are as follows: ASSETS
March 27,
June 19,
October 9,
1937
1937
1937
Cash in banks and on hand
$203,692.57
$178,164.68
$ 61,146.42
Accounts and notes receivable
86,509.55
82,292.18
77,365.18
Reserve for doubtful accounts
(9,445.95)
(9,181.00)
(6,451.94)
Inventories of materials and supplies
45,908.64
53,392.23
53,527.02
Inventories of glass
36,599.42
72,299.19
241,222.73
Prepaid insurance and taxes
6,233.54
5,770.89
7,225.96
Deposit on liability insurance contract
2,800.00
2,800.00
2,800.00
Stock of the Citizens Gas Company
50,000.00
Sinking fund
90.00
90.00
90.00
Account of the Twin City Pipe Line Company (for bal-
ance due under contract for sale of Citizens Gas
Company stock)
40,469.95
Sundry current assets
1,492.82
2,040.74
494.92
Fixed assets (net)
155,771.61
156,790.58
220,019.88
Clay materials and finished clay shapes
1,838.23
6,662215
5,649.90
Tank repair materials
7,940.79
3,073.20
3,601.16
Bond discount
1,479.94
1,041.55
457.03
TOTAL ASSETS
$590,911.16
$605,196.39
$707,618.21
LIABILITIES AND CAPITAL
Liabilities
Accounts payable for purchases and expenses (other
than account due parent company)
$ 22,594.38
$ 21,694.81
$ 42,064.50
Due to Fourco Glass Company for commissions
12,067.76
8,665.60
Due to Fourco Glass Company for cash advances
47,989.22
Due to Fourco Glass Company for materials and
supplies
3,086.04
6,328.42
8,691.88
Accrued payroll
26,368.96
26,975.61
28,378.78
Accrued interest
1,107.58
1,929.57
968.05
Accrued federal and state income taxes for 1936
4,611.72
4,345.41
1,957.43
Accrued taxes - other
12,990.06
15,106.65
8,656.57
Other accruals
1,495.88
6,338.08
3,449.51
84,322.74
91,384.15
142,155.94
Mortgage notes
144,000.00
100,000.00
100,000.00
Reserve for tank repairs
48,192.19
83,941.54
115,369.54
Capital
Capital stock outstanding
140,000.00
140,000.00
140,000.00
Earned surplus January 1, 1937
130,476.13
130,476.13
130,476.13
1937 Net earnings
43,920.10
59,394.57
79,616.60
TOTAL CAPITAL
314,396.23
329,870.70
350,092.73
TOTAL LIABILITIES AND CAPITAL
$590,911.16
$605,196.39
$707,618.21
*352 On April 27, 1936 the five individuals owning the stock of the petitioner entered into a written contract with the Fourco Glass Company of Clarksburg, West Virginia, to sell their stock in petitioner to that company. One Hundred Thousand Dollars of the purchase price was, in accordance with the contract, evidenced by five promissory notes for $20,000 each, payable one each year on the 27th of April thereafter. In 1936 and 1937 a substantial part of the consideration evidenced by these purchase money notes remained unpaid. The contract in question provided that so long as any of the purchase price should remain unpaid no part of the surplus or net earnings of petitioner should be "paid out or expended, except for the following: (a) For the payment of taxes; (b) For the improvements and betterment of the plant and property of the Harding Glass Company; (c) For the payment and discharge of the outstanding bonds of the Harding Glass Company, which are superior in priority and lien to the said purchase money notes above described; and (d) For the payment of the said purchase money notes." Petitioner was a formal party to this contract and signed the said notes together with the purchaser, *353 Fourco Glass Company. On April 30, 1936 a contract was entered into between the Fourco Glass Company and the Diamond Alkali Company under which the former borrowed from the latter, $250,000, secured by a collateral deposit of the purchased stock of the petitioner. This contract, formally signed by both of the named contracting parties, provided inter alia: Fourco further agrees that, so long as any part of the said loan remains unpaid, it will not permit Harding to declare any dividends without first procuring the written consent of Diamond, and that it will not permit the property and assets of Harding to be depleted in any manner whatsoever except through losses incurred in the ordinary conduct of its business or by payments due on the deferred purchase price of Two hundred Forty-four Thousand (244,000) dollars on the acquisition of the stock of said Harding Glass Company. Upon the execution of the contract by the parties, attention was called by one of the attorneys to the fact that petitioner was not a party to the contract and consequently had no primary obligation thereunder. To meet this situation and satisfy Diamond Alkali, a letter was written and delivered upon the *354 same date, and coincident with the execution of the contract, by petitioner to Fourco as follows: April 30, 1936 Fourco Glass Company Union National Building Clarksburg, W. Va.
Gentlemen: This is to confirm the fact that we agree to the conditions stated in a loan agreement made of even date - this 30th day of April, 1936 - between you and the Diamond Alkali Co., a Delaware Corporation, with its principal office at Pittsburgh, Pennsylvania. We have been fully advised of the detailled conditions stated in such agreement which consists of twelve paragraphs covered in five pages of the paper titled "Loan Agreement" of which we have been submitted a copy. Very truly yours, Harding Glass Company by: (Signed) Eugene Rolland Acting President No permission was requested by petitioner from Diamond Alkali Company for payment of dividends and no permission was granted. Petitioner in its manufacture of glass operates several heating tanks kept under very high temperature. It is necessary to make repairs to the linings of these tanks at frequent intervals. Some of these, called "hot repairs," are made while the tank is in operation. Others, termed "cold repairs," require the stoppage *355 of work and the cooling off of the tank. These necessary repairs constitute a substantial part of the cost of petitioner's operation. Petitioner has consistently maintained on its books an account termed "reserve for tank repairs." At intervals it debits this account with amounts which it is estimated will be necessarily expended for that purpose. These amounts are not then reflected as deductions in computing net income for tax purposes. When the repairs are actually made the cost thereof is credited to the reserve and deducted from gross income in computing income tax liability. The maintenance of such a reserve is in accord with good accounting practice in the industry. On June 28, 1937 petitioner entered into a contract with the Twin City Pipe Line Company of Fort Smith, Arkansas, under which it conveyed to the latter 931.82 shares of stock which it owned in the Citizens Gas Company of Fort Smith, Arkansas and which had cost it $25,000. The stated consideration for the sale was $50,000, which was to be paid without interest and only by credits to be taken on bills for gas furnished by the purchaser to petitioner over the ten-year term of the contract. Under certain conditions *356 it was provided that the purchaser, even though the full amount of the purchase price had not been paid through these credits, might retain the stock and its obligation to make further payment by these credits or otherwise would end. Petitioner actually collected the full purchase price over three years as follows: 1937
$16,792.90
1938
17,557.35
1939
15,649.75
Total
$50,000.00
Petitioner treated the gain as realized only when payments were actually received in excess of the $25,000 cost of the stock. Respondent has treated the entire gain of $25,000 as realized in 1937 upon the transfer of the stock. Petitioner's accounts are maintained upon the accrual basis. The item of $70,417.69 appearing in petitioner's balance sheet as of December 31, 1937, and designated as an amount due Fourco Company for advances, represents the total due by petitioner to that company upon its demand note for advances to petitioner for the construction of new buildings. Opinion Petitioner first contends that it was precluded from paying dividends in 1936 and 1937 by the provision of its deed of trust first set out in the findings. This provision restricts petitioner in its payment of dividends *357 to "earnings subsequent to January 1, 1928", calculated after making proper allowances and deductions for depreciation and depletion. Petitioner admittedly had earnings in 1936 and 1937, thus subsequent to the date specified in the contract. The amount of these earnings is not in dispute as to the one item of $25,000 for 1937 which respondent contends was then realized from the sale of its Citizens Gas Company stock. Petitioner argues, however, that although the contract specifies "earnings subsequent to January 1, 1928", what was really meant by the parties was earnings accumulated after that date and, it admittedly having had substantial net losses subsequent to that date and prior to 1936, that such losses must be reflected in determining "earnings subsequent to January 1, 1928" within the meaning of the contract. Witnesses testified that the intention of the parties in framing the contract was to restrict petitioner in the payment of dividends to surplus in excess of that existing at January 1, 1928. Petitioner argues further that the provision of the paragraph of the deed of trust here under discussion, defining "earnings" as those computed with allowance and deduction *358 for "depreciation and depletion", requires that its "reserve for tank repairs" be reflected in such computation. Whatever doubt may have existed in the past as to the restrictive effect of section 26 (c) (1) of the Revenue Act of 1936 in limiting the credit allowable, it is now settled beyond dispute that the rule to be applied is one requiring the taxpayer to bring the contract restriction upon which he relies within the exact and express wording of the statute. A contract which does not definitely express the prohibition does not suffice. It is not sufficient that the contract, no matter how clearly, bind the taxpayer to pay no dividends if that obligation rests upon implication. ; ; As the court said in the recent case of , in reference to the opinion in the Ohio Leather Co. case, supra: * * * The latter opinion construes § 26(c) (2) of the Act, pointing *359 out that the "taxpayer must sustain the burden of showing compliance with its exact terms" to be entitled to the special credit which the statute grants. The Supreme Court had previously held in , that the word "expressly" in the statute must be construed literally, and that a contract which meets the requirements of the statute only by "implication" is not sufficient compliance. The application of this rule concludes petitioner. The meaning of "earnings subsequent to January 1, 1928" is not ambiguous. In fact petitioner does not so contend. In effect the argument is that the parties did not mean "earnings subsequent to January 1, 1928" but something different - something more than and not within that expression. Thus testimony is introduced to show that what the parties really meant was "accumulated earnings subsequent to January 1, 1928". That such a construction is consistent with the purpose of the contract as disclosed by the negotiations and surrounding circumstances, may be admitted. But that is not sufficient. In , decided after *360 the decision of the Supreme Court in , the taxpayer in somewhat similar circumstances sought to have the term "earnings and profits" construed as meaning "current earnings and profits". The Circuit Court of Appeals for the Eighth Circuit, in affirming the Board, refused in this language: To concede arguendo that such a construction of the contract is reasonable does not aid the petitioner. So to construe the contract one must supply by implication a provision not expressly stated. One must by implication insert in section 10 a provision requiring the notes to be paid out of current earnings and profits. There is no such express provision in section 10. See also . Likewise, the definition of earnings as those computed by allowance of depreciation and depletion does not expressly provide for a computation reflecting "the reserve for tank repairs". Not only are those expenditures designated as "repairs" but the evidence shows them to be such and not depreciation or depletion. They were so treated by petitioner and the full amount *361 expended therefore was deducted as an expense. There is no express provision of the contract providing for the deduction of the reserve, in computing the earnings specified therein. Petitioner's next contention rests upon the provision of the deed of trust providing that no payment of dividends shall be made which will reduce the current assets below two and one-half times the current liabilities. At the close of 1936 petitioner's book current assets exceeded two and one-half times its current liabilities by $112,618.76 which is far in excess of the adjusted net income of $50,448.21 for that year. Petitioner claims a credit under this contract only for 1937. Petitioner's books permit a determination of current assets and liabilities as of four dates in 1937, these being March 27, June 19, October 9 and December 31. As of these dates, the ratio of book current assets to book current liabilities is agreed to be as follows: March 27,
June 19,
October 9,
December 31,
1937
1937
1937
1937
Current Assets
$372,828.82
$391,401.06
$440,180.19
$442,706.23
Current Liabilities
84,322.74
91,384.15
142,155.94
168,731.13
Two and one-half times current liabilities
210,806.85
228,460.57
355,389.85
421,827.83
Excess of current assets over above item
162,021.97
162,940.49
84,790.34
20,878.40
*362 Respondent determined an adjusted net income for 1937 of $157,331.93 but his determination of taxable net income we have reduced by $25,000 by decision on the issue of Gas Company stock sold. It will thus be seen that the contract did not preclude petitioner in declaring dividends in an amount in excess of its adjusted net income until sometime in that year subsequent to June 19. Petitioner contends that if it was precluded at the close of the year, then the year". Respondent argues that the bar to be available must be effective throughout the year. Certainly no one could say that a contract forbidding a taxpayer to pay a dividend on any one day would entitle it to a credit for undistributed profits tax merely because that date was "within the year". This credit provision is to be strictly construed. ;So construed it is obvious respondent is correct. See Regulations 94, art. 26-2(b)(2). Moreover, passing this question, petitioner's computation of its current liabilities is disputed by respondent. He contends that the item of $70,417.69, *363 representing advances to petitioner by its parent, the Fourco Company, on its demand note, was not of a character to be termed a "current liability" because the proceeds of the loan were used by petitioner for construction of new buildings. With this we do not agree. This was a liability due upon demand. Merely because the proceeds represented an investment in fixed assets the liability remained current until funded by replacement with bonds or long-term notes. Respondent also questions petitioner's inclusion in its current liabilities of $20,000, the next due note payable on April 27 following, of the series representing the deferred payments by Fourco on its purchase of petitioner's stock from the individual owners. We agree with respondent as to this item. Although petitioner signed the note with its parent, Fourco, it constituted a part of the purchase price of property being acquired by the latter. In so far as its financial structure was concerned, petitioner was essentially merely a guarantor of the payment by Fourco. This fact was recognized by petitioner in its omission of the obligation from its accounts as an indebtedness. It could be called upon to pay only if Fourco *364 defaulted and this contingency never materialized. In any accurate statement of its accounts the item should be treated, we think, as a mere contingent liability. We hold that petitioner was not precluded from paying dividends within the taxable years involved by reason of the cited provision of the deed of trust. Petitioner next contends that the contract of April 27, 1936 precluded its payment of dividends in 1936 and 1937. The provision upon which petitioner relies specifies only those things for which petitioner was permitted to make disbursements. No mention is made in this provision of dividends but they are not included among the permitted payments. Here again we think the strict rule laid down in , concluded petitioner. There is no doubt that this provision actually resulted in a restriction upon petitioner's payment of dividends. No prohibition is expressed, however, as to dividend payments. That restriction is created by implication from the express provisions. The fact that it is a necessary implication does not, we think, suffice. *365 In our opinion the application of this rule also disposes of petitioner's next contention that a restriction within the statute arises under the provisions of the contract of April 30, 1936. This contract was between Fourco, petitioner's parent corporation, and Diamond Alkali Company, covering a loan by the latter to the former. Fourco agreed, under the contract, that it would not permit petitioner to pay a dividend without consent of Diamond Alkali while the loan was unpaid. Upon attention being called to the fact that petitioner was not a party to the contract and therefore no obligation rested upon it, a letter was written by petitioner to Fourco, signed by its vice president, setting out that "we agree to the conditions stated" in the loan contract. That letter is said to satisfy the conditions in section 26 (c) (1), supra, which entitle petitioner to the contested credit. This letter contains no mention of dividends, much less an expressed commitment to refrain from their distribution. Moreover, in agreeing to the terms of the Fourco commitment, petitioner did not expressly agree not to pay dividends without permission. At most, it agreed only that its controlling *366 stockholder, Fourco, "* * * will not permit * * * [petitioner]" to pay them without the specified permission. But, assuming this agreement bound petitioner as it contends, it did so only by incorporating by reference the terms of the Fourco contract in petitioner's agreement. That again is not sufficient to support the contested credit. As the Supreme Court said in : * * * True, obligation not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which "expressly deals with the payment of dividends." It is our conclusion that under the rule heretofore stated the contract between Fourco and Diamond Alkali, together with the letter written by petitioner, does not constitute an agreement within the applicable section of the statute. The final issue is upon respondent's action in including in income for 1937 the sum of *367 $25,000 as realized in that year by petitioner upon the sale of its stock in the Citizens Gas Company. Petitioner was on an accrual basis. Upon that premise respondent, in the deficiency notice, determined that this disputed item of income was accruable and thus realized when the sale occurred. The rule is, however, that an item is accruable only when all the events have occurred fixing the liability to pay. , cert. denied, ; ; affd., ; cert. denied, . Here the obligation of the purchaser to make payment of $50,000, or any other amount, for the stock was not fixed and absolute when the sale occurred. It was contingent upon petitioner's accepting delivery of gas by the purchaser. Payment was to be made only by deduction of a specified percentage against bills for gas delivered. Under certain conditions, the obligation of the purchaser to make any further payments by such credits or otherwise would cease. In such circumstances, *368 we think that the gain was not accruable as of the date of the conveyance of the stock. Upon brief, respondent takes the position that petitioner has failed to show that the contract between it and the purchaser of the stock did not have a fair market value of $50,000 as of the date of its execution and the delivery of the stock. That such a contract had any fair market value may at least be doubted. Cf. . In any event, the determination of that part of the deficiency involving this item was not rested upon its fair market value, nor was any such issue raised except in respondent's brief. In the deficiency notice the disputed item was there treated merely as one subject to accrual as a fixed indebtedness, the payment of which alone was postponed. It was upon that question the issue was joined and heard, and is now decided. In its return petitioner treated its collections made by deductions against bills for services rendered by the purchaser of the stock as income then realized in excess of $25,000, its cost of that stock, as realized income when received. On this record we think that treatment was correct. *369 Decision will be entered under Rule 50. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - (c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS. - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩